## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA MOBILE DIVISION

| | |
|---|---|
| JOHN W. COLLEY, by and through his Attorney-in-Fact JOHN R. COLLEY; JOHN R. COLLEY and KELLY C. COLLEY;<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ORANGE BEACH, ALABAMA; ORANGE BEACH CITY SCHOOLS; ORANGE BEACH POLICE DEPARTMENT; WILLIAM R. WILKES; CHRIS SHAW; SCOTT COOK; KYLIE BURLESON; JOE BLEVINS; DAVID NIX; ROBERTO MORALES, JR.; ANTHONY T. KENNON; JOEY BROWN; BRANDON BORDELON; ALISA DIXSON; RIVER DEVOE; RANDY MCKINNEY; AUTUMM JETER and RYAN A. FORBESS, each named in his or her individual capacity; and ENCORE  REHABILITATION, INC., Respondeat Superior,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) **CASE NO:** ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT

COME NOW the Plaintiffs John W. Colley, by and through his attorney-in-fact John R. Colley, John R. Colley, and Kelly C. Colley, by and through their undersigned counsel, K. David Sawyer, of McPhillips Shinbaum, LLP, and files this

1

Complaint against each of the named Defendants. In support thereof, Plaintiffs assert the following:

## I. JURISDICTION & VENUE

1.     Plaintiffs file this Complaint, institute these proceedings, and invoke the jurisdiction of this Court under and by virtue of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) for violations of § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; the Fourteenth Amendment to the United States Constitution; the Fourth Amendment to the United  States Constitution; the First Amendment to the United States Constitution; and other Alabama laws as stated herein.

2.     Venue is proper in the Mobile Division of the Southern District of Alabama since the alleged unlawful actions of each named Defendant occurred in or in close proximity to Baldwin County, Alabama.

## II. PARTIES

3.     Plaintiff John W. Colley is a citizen of the United States and a resident of Baldwin County, Alabama.  John W. Colley, (hereinafter referred to as "John W") is over the age of nineteen years.  Plaintiff John W has provided legal Durable Power

of Attorney to his father John R. Colley, who is with proper power to file suit in this Court. (Attached hereto as Exhibit A).

4.    Plaintiff John R. Colley is a citizen of the United States and a resident of Baldwin County, Alabama.  John R Colley, (hereinafter referred to as "John R") is over the age of nineteen years.

5.    Plaintiff Kelly C. Colley (hereinafter referred to as "Kelly Colley") is a citizen of the United States and a resident of Baldwin County, Alabama. Kelly Colley is over the age of nineteen years.

6.    The Defendant City of Orange Beach, Alabama (hereinafter referred to as "the City") is named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), for violating the Plaintiff John W Colley legal rights pursuant to a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and d) the Fourth Amendment to the United States Constitution.  OBCS is a public school system created under the color of Alabama law, is a recipient of both federal and state funds and required to comply with the terms and provisions of both federal and state law.

7.    The Defendant Orange Beach City Schools (hereinafter referred to as "OBCS") is named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), for violating the Plaintiff John W Colley's legal rights pursuant to a) § 504 of the

Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and other Alabama laws. OBCS is a public school system created under the color of Alabama law, is a recipient of both federal and state funds and required to comply with the terms and provisions of both federal and state law.

8.    The Defendant Orange Beach Police Department (hereinafter referred to as "the Police Department") is named pursuant to 42 U.S.C. § 1983, for violating the Plaintiff John W Colley's legal rights pursuant to a) the Fourteenth Amendment to the United States Constitution; b) the Fourth Amendment to the United States Constitution and other Alabama laws. The Orange Beach Police Department is created under the color of Alabama law, is a recipient of both federal and state funds and required to comply with the terms and provisions of both federal and state law.

9.    The Defendant William R. Wilkes (hereinafter referred to as "Defendant Wilkes") was the Superintendent of the OBCS at all relevant times and is named only in his individual capacity. Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant Wilkes, while acting under the color of state law, deprived Plaintiff John of his rights, privileges, or immunities protected by a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth

4

Amendment to the United States Constitution; and d) the First Amendment to the United States Constitution; and applicable Alabama law.

10.    The Defendant Chris Shaw (hereinafter referred to as "Defendant Shaw") was the Principle of the City of Orange Beach High School at all relevant times and is named only in his individual capacity.  Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant Shaw, while acting under the color of state law, deprived Plaintiff John W. of his rights, privileges, or immunities protected by a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and applicable Alabama law.

11.    The Defendant Scott Cook (hereinafter referred to as "Defendant Cook") was the Vice-Principle of the City of Orange Beach High School at all relevant times and is named only in his individual capacity.  Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant Cook, while acting under the color of state law, deprived Plaintiff John of his rights, privileges, or immunities protected by a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and applicable Alabama law.

12.    The Defendant Kylie Burleson (hereinafter referred to as "Defendant Burleson") was the Director of Special Services for the Orange Beach City Schools at all relevant times and is named only in her individual capacity.  Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant Burleson, while acting under the color of state law, deprived Plaintiff John of his rights, privileges, or immunities protected by a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and applicable Alabama law.

13.    The Defendant Joe Blevins (hereinafter referred to as "Defendant Blevins") was the Director of Personnel, Operations, and Student Services for the Orange Beach City Schools at all relevant times and is named only in his individual capacity.  Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant Blevins, while acting under the color of state law, deprived Plaintiff John of his rights, privileges, or immunities protected by a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and applicable Alabama law.

14.    The Defendant David Nix (hereinafter referred to as "Defendant Nix") was the High School Football Coach for the City and/or OBCS at all relevant times

and is named only in his individual capacity.  Named pursuant applicable Alabama law, Defendant Nix negligently and/or recklessly acted to cause personal injury and damages suffered by Plaintiff John W.

15.     The Defendant Roberto Morales, Jr. (hereinafter referred to as "Defendant Morales") was the Athletics Director for the City and/or OBCS at all relevant times and is named only in his individual capacity.  Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant Morales, while acting under the color of state law, deprived Plaintiff John of his rights, privileges, or immunities protected by a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and applicable Alabama law.     Also, named pursuant to Alabama law, Defendant Morales negligently and/or recklessly acted to cause personal injury and damages suffered by Plaintiff John W.

16.     The Defendant Anthony T. Kennon (hereinafter referred to as "Defendant Kennon" or "Mayor Kennon") was the Mayor of the City of Orange Beach, Alabama at all relevant times, and is named only in his individual capacity. Mayor Kennon is named pursuant to 42 U.S.C. § 1983 for violating the Plaintiff John W's legal rights pursuant to a) the Fourteenth Amendment to the United States

Constitution; and b) the First Amendment to the United States Constitution; and applicable Alabama law.

17.    The Defendant Joey Brown (hereinafter referred to as "Defendant Joey Brown ") was an officer of the Orange Beach Police Department at all relevant times, and is named only in his individual capacity. Defendant Brown is named pursuant to 42 U.S.C. § 1983 for violating each named Plaintiff's legal rights pursuant to the First Amendment to the United States Constitution; and other applicable Alabama law.

18.    The Defendant Brandon Bordelon (hereinafter referred to as "Defendant Bordelon") was an officer of the Orange Beach Police Department at all relevant times, and is named only in his individual capacity. Defendant Bordelon is named pursuant to 42 U.S.C. § 1983 for violating Plaintiff John W.'s legal rights pursuant to the Fourth Amendment to the United States Constitution; and other applicable Alabama law.

19.    The Defendant Alisa Dixson (hereinafter referred to as "Defendant Dixson") was an officer of the Orange Beach Police Department at all relevant times, and is named only in her individual capacity. Defendant Dixson is named pursuant to 42 U.S.C. § 1983 for violating each named Plaintiff's legal rights pursuant to the Fourth Amendment to the United States Constitution, and other applicable Alabama law.

20.    The Defendant River Devoe (hereinafter referred to as "Defendant Devoe") was an officer of the Orange Beach Police Department at all relevant times, and is named only in his individual capacity. Defendant Devoe is named pursuant to 42 U.S.C. § 1983 for violating each named Plaintiff's legal rights pursuant to the Fourth Amendment to the United States Constitution; and other applicable Alabama law.

21.    The Defendant Randy McKinney (hereinafter referred to as "Defendant McKinney") was the Superintendent for the OBCS Board of Education at all relevant times and is named only in his individual capacity.  Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant McKinney, while acting under the color of state law, deprived Plaintiff John of his rights, privileges, or immunities protected by a) § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and applicable Alabama law.

22.    The Defendant Autumm Jeter (hereinafter referred to as "Defendant Jeter") was the Assistant Superintendent of State Board of Education at all relevant times and is named only in her individual capacity.  Named pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Defendant Jeter, while acting under the color of state law, deprived Plaintiff John of his rights, privileges, or immunities protected by a) §

504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; b) the Americans with Disabilities Act as Amended, 42 U.S. Code § 12101, et seq.; c) the Fourteenth Amendment to the United States Constitution; and applicable Alabama law.

23.    The Defendant Ryan A. Forbess, MD (hereinafter referred to as "Defendant Forbess") was the acting school physician for the Orange Beach City Schools at all relevant times and is named only in his individual capacity. Named pursuant applicable Alabama law, Defendant Nix negligently and/or recklessly acted to cause personal injury and damages suffered by Plaintiff John W.

24.    The Defendant Encore Rehabilitation, Inc. is named pursuant to Alabama law for respondeat superior liability, and for the negligent and/or reckless actions of the Defendant Forbess, Defendant Nix, Defendant Morales, as employees, agents or otherwise working for Encore Rehabilitation, Inc.

### III. STATEMENT OF FACTS

25.    Beginning in 2020, John W was enrolled as a student in the Orange Beach City School system and assigned to their Virtual Academy on September 11th 2023 as he suffered a qualifying disability requiring a plan under an Individualized Education Plan (hereinafter referred to as "IEP") or under the Section 504 of the Rehabilitation Act of 1973 (hereinafter referred to as "Rehab. Program.").

26.    John W was a student with a diagnosis of ADHD, learning disorders, and had behavioral needs. These diagnoses and needs qualified John for an IEP Plan or Rehab Program beginning in 2012, when John was in 2nd grade in the Montgomery County School System.

27.    John W had been part of an IEP in the Montgomery County School System and later, the Pike Road School System since the 2nd grade.

28.    In 2020, the Plaintiffs moved to Orange Beach, Alabama.  John W was in the 9th grade, and at that time John W entered into Orange Beach School System.

29.    When John W entered the Orange Beach School System, both the Montgomery County Schools and Pike Road Schools forwarded John's IEP documents and information to the Orange Beach Schools.  This included specific information that John W participated and learned better in small group settings.

30.    This failure by Orange Beach Schools to honor John's Individualized Education Program (IEP) began as early as August 14, 2020. On that date, the John R and Kelly Colley initiated a series of consistent email communications with school officials, expressing serious concerns about the inappropriate learning environment and the school's ongoing negligence in adhering to the IEP that had been developed and approved prior to John's W enrollment at Orange Beach Schools.

31.    Despite the IEP explicitly stating John W functioned best in a one-on-one instructional setting, the school failed to implement this critical accommodation.

11

Instead, the district maintained a generalized instructional model that did not separate students based on their individualized educational needs, thereby denying John W the specialized support he required and to which he was legally entitled under federal law. This failure to tailor John's W educational environment as prescribed contributed to his ongoing academic and emotional struggles.

32.     On August 26, 2020, John R Colley and Kelly Colley met with one of John's teachers.  However, no IEP meeting with Orange Beach Schools occurred until February 2, 2021 via Google meeting.  Orange Beach Schools were not going to follow the IEP as outlined and defined by the Pike Road Schools.

33.     Since his initial identification and IEP in both the Montgomery Public Schools and Pike Road Public Schools, John W had made little progress across any area of educational performance needs.

34.     John W's eligibility scores in 2018 revealed a regression from his 6th to 7th grade years in terms of his reading grade equivalent, from a third grader in his eight month of instruction (3.8) back to less than a second grader (<2.0).  John's reading functioning included in his 23-24 IEP had him on the reading level of a third grader in his seventh month of instruction (3.7).

35.     With an interest to continue to higher education, John W's  functioning level should have been a huge red flag to the Orange Beach High School, responsible for his education, including the IEP and other interventions.

36.    On or about April 20, 2022, an incident occurred at Orange Beach High School involving another high school student subjected to continuous bullying in full view of both staff and students during the lunch period. This bullying persisted without intervention from any school personnel. In response, John W stepped in to defend and protect the student from further harm.

37.    Rather than recognizing John W's intervention as an act of defense, the Orange Beach school administrators disciplined John W, consisting of a three-day out-of-school suspension and two additional days of in-school suspension.

38.    In addition, the aggressor received no immediate disciplinary action and the Orange Beach school administrators allowed the aggressor to continue participating in extracurricular activities, including a school-sponsored baseball tournament.

39.    Not until approximately two weeks after the incident, and only after the parents of the bullied student demanded accountability for the bully's actions, did the Orange Beach school administrators issue an in-school suspension to the bully who instigated the aggression.

40.    The parents of the bullied student also submitted a formal written statement to Orange Beach school administrators demanding an explanation as to why the aggressive bully had not been disciplined, and why John W had been the student punished for defending her son.

41.     Thereafter, on or about June 7, 2022, Matt Simmons, an Orange Beach School Resource Officer, even submitted a petition in Court seeking to have John W criminally charged with harassment in connection with John W's intervention with the bullying that occurred April 20, 2022.

42.     This petition was filed long after the Orange Beach school administrators had already disciplined John for the same incident, including both out-of-school and in-school suspension.  Ultimately, the frivolous and unsupported petition was nolle prossed.

43.     All of this further illustrates the Orange Beach school system's custom, pattern and practice of unequal treatment.

44.     On or about July 1 2022, the City of Orange Beach, Alabama, created its own public school system, at which time John W became a student in the City's public schools.

45.     Amendment 111 of the Alabama Constitution (1901) affords authority to the Alabama legislature to provide for or authorize establishment and operation of Alabama's schools for its citizens and it is the policy of the State of Alabama to foster and promote the education of its citizens in a manner and extent consistent with its available resources.

46.     Moreover, pursuant to Alabama Code (1975) §16-1-14, any city, county, or other local public school board shall, consistent with Ala. Code (1975)

§16-28-12, prescribe rules and regulations with respect to behavior and discipline of pupils enrolled in the schools under its jurisdiction. Any and all local rules and regulations adopted pursuant to this section shall first be approved by the State Board of Education.

47.    Any pursuant to Alabama Code (1975) §16-1-14, any such removal, isolation, or separation from the school may not deprive such pupils of their full right to an equal and adequate education.

48.    Defendant Jeter was aware of the local rules and regulations changes made by the OBSC with respect to behavior and discipline of pupils enrolled in OBSC and knew that the local rules and regulations adopted by OBSC had not been approved by the State Board of Education.

49.    At all times material hereto, John W was entitled to his full right to an equal and adequate education under § 504 of the Rehabilitation Act of 1973; Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131; and applicable Alabama law.

50.    Kylie Burleson, the Orange Beach School's Special Services Coordinator, failed to recognize John W's reading deficits in the form of developing a reading goal or specialized instruction minutes.

51.    Rather, Kylie Burleson attempted to mask John W's true deficits by utilizing and over-using accommodations such as speech to text, text to speech, and

reading questions out loud. This lack of care and concern for John W's reading deficits continued and never changed.

52.    John W's 2018 math scores revealed similar deficits, functioning at the 4th grade level at that time. His scaled score in math of 1027 revealed a similar functioning level from his initial eligibility.  As with reading,  John W made no tangible gains in this area and remained in need of intensive intervention via direct specialized instruction.

53.    Kylie Burleson again did not even recognize these extremely low math scores and did not provide service to John W with any goals or specialized instruction. This failure further evidenced how Orange Beach City Schools did not provide John W with mandatory intervention and an IEP.

54.    Kylie Burleson essentially failed to fully evaluate John W in the area of academics in order to establish his levels of performance and identify his accurate deficit levels.

55.    John W, a student with social/emotional needs, also required a Behavior Intervention Plan (BIP).  It is unfortunately clear that whoever wrote John W's FBA/ BIP at Orange Beach City Schools had no training in this area, as these same employees supported John's school suspensions in April 2022.

56.    John  W's  FBA/BIP  results  revealed  elevated  scores  across  most subsections, with John W's most elevated scores in the areas of emotional regulation,

impulse control, working memory, and executive functioning skills. These scores were clinically significant by all raters, including his parents, and the Orange Beach general education teacher and resource teacher.

57.    Various Orange Beach City School employees conducted interviews with John R Colley and Kelly Colley where it was explained that John W's emotional behavior becomes escalated by adults when he is frustrated or upset and that he needs to be talked through it in order to re-regulate. If approached in an aggressive or accusing manner by an adult, he will "fire back" in the same way. This was discussed in several IEP and teacher meetings with John R Colley and Kelly Colley.

58.    Despite the numerous deficits identified in the BRIEF-2 and interviews, the only deficits deemed significant enough for identification in the BIP included inappropriate language, skipping class, and task refusal. While these are behaviors worthy of being addressed, the targeting of these behaviors does nothing to address the root cause of why John W acted out and to extinguish the unwanted deficit behaviors with instructional skill acquisition.

59.    Even when John W lost his older brother (age 24) in 2021, at no time did anyone at the Orange Beach City Schools offer any additional support services to help with understanding any additional behavioral issues or counseling.

60.     The BIP hypothesizes that John W was acting in a way and as a means of escaping a nonpreferred task, person, or classroom, but fails to address further reasons why a certain class or task would be nonpreferred for him. For example, John W became extremely frustrated when presented with 12th grade work when functioning only on a 3rd or 4th grade level.

61.     While the replacement behaviors identified by the BIP included teaching "self-monitoring, coping strategies, and organizational tools," this could not address the fact that John was behind academically and was likely causing the escape behaviors identified by the BIP.

62.     Orange Beach City Schools and Kylie Burleson repeatedly failed to appropriately evaluate John in the area of social/emotional development in order to properly write and implement a Behavior Intervention Plan (BIP) which includes the identification of the antecedent, the behavior itself, and the consequence of that behavior.

63.     Orange Beach City Schools and Kylie Burleson further failed to provide the current BIP and any necessary staff training to school employees who interacted with John W, despite the IEP stating that the BIP will be in effect in all settings, including both academic and extra-curricular activities.

64.     Each of these failures, among others, eventually led to John W's unlawful arrests and to the Orange Beach City School's removal of John W from

attending class and participating within the Orange Beach City Schools system for the entirety of his senior year in 2023-2024.

65.    For example, on or about March 30, 2023, John W was falsely arrested at work by the Orange Beach City Police at approximately 6:00 a.m. and charged with "Criminal Conspiracy."  In fact, the Orange Beach police officers were parked at the gate where John W worked, and when John W arrived, the officers immediately arrested him with no explanation.

66.    John R immediately contacted the Orange Beach Police Department to asked what had happened and to schedule any necessary interview with John W with his presence.   Nonetheless, shortly thereafter, on or about April 4, 2023, between the hours of 9:30 a.m. and 11:30 a.m., in direct violation of Alabama law,  Alabama State Board of Education Policy, and  Orange Beach City School's policy,   Orange Beach Police officer Will Chism and an officer named "Jennifer Croll" unlawfully entered the Orange Beach High School and pulled John W from his classroom in front of other students and school personnel, and placed him in a private room where they unlawfully interrogated him regarding an alleged incident that had occurred off campus during Spring Break.

67.    At no time had former Principal Michael Lee or Assistant Principal Scott Cook been provided notice of any police entering the school, and no request and no warrant existed to apprehend John W in front of other students and personnel

while at school.  Again, this was in direct violation of Alabama law, Alabama State Board of Education Policy, and Orange Beach City School's policy.

68.    It was well known that any student enrolled in the Orange Beach School System could not be interrogated by any non-school authority without first providing knowledge of the school principal or the assistant principal.

69.    In addition, prior to any such lawful interrogation, any student was required to be provided options to speak with his or her parent, to decline to talk until his parent was present, or to talk with a law enforcement officer either in or out of the presence of the school official.

70.    On or about April 5, 2023, John R Colley informed the Orange Beach City Schools' President, Randy Mckinney, and Former Alabama State Board of Alabama Vice President and current State Board of Education President, of this *unlawful apprehension and interrogation of John W by the Orange Beach Police officers* Chism and Croll, only to learn these unlawful actions had been condoned by Defendant Randy McKinney.  When John R contacted the Orange Beach Police Chief to inform him of this  unlawful apprehension and interrogation of John W by the Orange Beach Police officers Chism and Croll, the Police Chief responded that he did not know of these officers going to the school to interrogate John W.

71.    On April 13, 2023, without the review and approval by the Alabama State Board of Education as required, at the City's Board of Education Meeting,

Defendant Wilkes recommended a revised Code of Conduct for "Out-Of-School Violent Criminal Conduct" for the OCBS.   After Defendant McKinney made a motion to approve the revised Code, and after Lisa Nix (the wife of Defendant Nix) seconded the Motion, the City's Board unanimously voted and approved the unlawful amendment.

72.    Due to the language in the Code of Conduct amendment about a student's placement,   Alabama Code Section 16-1-14 required this type of amendment to first be approved by the State Board of Education, and not conflict or "infringe on any right provided to a student pursuant to the federal Individuals with Disabilities Education Act, Family Educational Rights and Privacy Act, Section 504 of the Rehabilitation Act of 1973, or the Americans with Disabilities Act of 1990.

73.    Nonetheless, this amended local Code of Conduct adopted for the OCBS had never been approved by the State Board of Education as required, and was in direct conflict with the federal Individuals with Disabilities Education Act, Family Educational Rights and Privacy Act, Section 504 of the Rehabilitation Act of 1973, or the Americans with Disabilities Act of 1990.

74.    One month later, on or about May 4, 2023, John R Colley and Kelly Colley requested an IEP meeting with Kylie Burleson and Desmond Mott (John W's IEP Teacher at the time), and asked that John W be retested in several areas due to John's lack of progress in school, including IQ testing.

75.    Shortly thereafter, on or about May 12, 2023, Defendant Rivers Devoe of the Orange Beach Police Department conducted a traffic stop involving a vehicle in which John W was a passenger.    The driver of the vehicle was the registered owner, was in control of the car and had access to its contents.

76.    However, Defendant Devoe did not arrest or charge the driver with any offense. Instead, the driver was taken to the Orange Beach City Jail and was subsequently released to his brother without any charges being filed.

77.    In contrast, John W, a passenger with no control over the vehicle, was falsely arrested for alleged possession of alcohol.  This allegation was unsupported and untrue, as at no time was John W in physical or constructive possession of any alcohol.

78.    Nevertheless, Defendant Devoe detained John W and transported him to jail, where he remained incarcerated for over eighteen (18) hours. During that time, John W submitted to a breathalyzer test and registered a 0.00 blood alcohol concentration, further confirming he had not consumed alcohol. This wrongful arrest and unlawful detention were clear violations of John W's constitutional rights and further illuminates how the Orange Beach Police Department developed a continued custom and practice of unlawful and discriminatory treatment of John W.

79.    Two months later, on July 28, 2023, John R Colley sent an email to Kylie Burleson, asking who would be John W's new IEP Teacher as Mr. Desmond

Mott was no longer employed by Orange Beach City Schools. Kylie Burleson responded that they were in the process of hiring and that John W would be assigned a case manager.

80.    On or about August 15, 2023, after receiving no response from Ms. Burleson or from any case manager, John R Colley requested the Orange Beach City Schools to identify who John's new IEP teacher would be, and to verify the status of the IEP testing earlier requested on May 4, 2023. Still, no one informed John R Colley who would be John W's IEP teacher.

81.    John W also was a member of the Orange Beach City High School Football Team and Wrestling Team, a school sponsored sport/extracurricular activity. John R Colley and Kelly Colley also were Mako Academics, Arts, and Athletics Club sponsors

82.    The IEP and BIP, as well as the protections provided under Section 504 also applied to non-academic and extracurricular activities.

83.    Accordingly, Defendant Kylie Burleson was required to provide all relevant staff members with copies of John W's IEP and BIP, and to train those staff members to understand and comply. These staff members included coaches and staff with the Orange Beach City High School's athletic department. However, Defendant Kylie Burleson had provided this information to only one of John W's teachers and coaches, Mr. Steve Devoursney.

84.    On the afternoon of August 21, 2023, the temperature had reached approximately 100 degrees, and John became overheated while at football practice and began vomiting.  John W had to be iced down multiple times by his coach Defendant David Nix.

85.    The following day, on the afternoon of August 22, 2023, John W informed Coach Jamey Dubose that he was not feeling well due to what had happened the previous day and was going to have to miss football practice.

86.    However, at approximately 2:30 p.m. that afternoon, Coach Scott Mansell informed John R Colley by text that if John W was not at practice that afternoon, he could not start in the football game on Friday. With this information, John W attended football practice on August 22, 2023.

87.    At football practice on the afternoon of August 22, 2023, the temperature again reached approximately 100 degrees.  During football practice the afternoon of August 22, 2023, John W again became sick and blacked out.

88.    The following day, on August 23, 2023, John R Colley called Coach David Nix requesting information and to learn what had happened to John W while at football practice on August 22, 2023.

89.    John R Colley also contacted the former AD Roberto Morales, Jr. and advised him that the Alabama High School Athletic Association was pushing games to a later time in the day due to the excessive heat.  However, Defendant Morales

informed John R Colley that Orange Beach High School was still beginning its high school football game on August 25, 2023 at 7:00 p.m.

90.    On the evening of August 25, 2023, John W and his other classmates were playing in the Orange Beach High School football game. During the first half of the game, John W again became ill and vomited approximately 6 times.

91.    During the football game halftime break, at approximately 8:17 p.m., with instruction or permission from Defendant Morales and/or Defendant Forbess, Defendant Coach David Nix called John R on his cell phone and stated John W was again throwing up and requested permission for Defendant Forbess, the Orange Beach City School Doctor, to "give John W something for his Nausea." Although John R agreed for John W to receive "something for his Nausea," he did not agree to allow anyone to give John W any prescription medication.

92.    Defendant Forbess was also John W's primary physician at the time, and Defendant Forbess had referred John W to a stomach specialist in Pensacola, FL, by the name of Dr. Blecker. Although John W was on three different prescription medications on August 25, 2023, no one, including Defendant Forbess, asked anyone, including John W, if he was taking any medication at the time.

93.    Rather, during the football game's halftime break, Defendant Forbess, Defendant Nix and Defendant Morales merely instructed John W to swallow "two white pills" that John R later learned to be a prescription medication named

"Zofran." Defendant Forbess, Defendant Nix nor Defendant Morales tested John W for a Fluid Volume Deficit, or "dehydration."

94.    After halftime, and during the first few minutes of the second half of the football game on August 25, 2023, John W's helmet became damaged, and the inside earpiece was missing or broken. John W became agitated due to his damaged helmet and attempted to let his coaches know about his helmet.

95.    However, the coaches forced John W back onto the field until after the kick-off. Following the kick-off, John W ran off the field highly agitated, again pointing at his helmet. When the coaches discovered John W's helmet was broken and that the ear-piece was missing, Coach David Nix attempted to repair his helmet.

96.    Shortly thereafter, and a few plays later, a referee threw a penalty flag concerning players on the field as one coach was telling John W to get off the field, while another coach was instructing John W to remain on the field. John W had become both highly confused and agitated.

97.    Witnessing John W's agitation and misunderstanding, Kelly Colley went from her seat in the stands to the field where she stood at the sideline fence seeking to learn what was happening to her son John W and to try to calm him down.

98.    When Kelly Colley attempted to speak with her son, she immediately observed that John W was exhibiting alarming physical and psychological

symptoms. John W was profusely sweating cold sweats, his eyes were markedly dilated, and he was avoiding all eye contact with her.

99.    Very concerned, Kelly Colley reached out to hold John W by the front of his jersey, and urged him to calm down and focus on his breathing.

100.    In a distressed state, John W exclaimed, *"I feel like I'm going out of my mind."*

101.    John W then abruptly pulled away from his mother and proceeded toward the field house, leaving Kelly Colly deeply alarmed by his deteriorating condition. Accordingly, Kelly Colley proceeded to follow John W to the field house. At or about the same time, Athletic Director Defendant Morales and Coach Slanton also followed John W to the field house.

102.    While at the field house, Defendant Morales instructed John W to return to the sideline to cheer on his teammates for the remainder of the football game.

103.    Defendant Morales also informed Kelly Colley and John W that while there was a misunderstanding of what had happened on the field, he "would get it all worked out."

104.    After cooling off in the field house, John W returned to the team's sideline as instructed by Defendant Morales and Defendant Morales escorted him to the sideline.

105.   However, shortly after John W returned to the team's sideline as instructed by Defendant Morales, Defendant Superintendent Randy Wilkes ran up to John W on the team's sideline, physically grabbed John W's jersey, began pushing John W towards the football field's exit, and yelled at John W that "he had to leave the game and that he was being expelled and falsely asserting John W had "hit his mom."

106.   Shortly thereafter, Mayor Tony Kennon also approached the sideline fence where Defendant Randy Wilkes was yelling at John W.  At that time Defendant Randy Wilkes stopped yelling, and Mayor Tony Kennon began to scream at John W, "Get him the fuck off the field, he hit his mom."

107.   Defendant Wilkes then began to publicly escort John W from the field without any reason or cause.

108.   Defendant Wilkes also became irate and shoved his panic button in John W's face taunting him and yelling in his face.  By using this panic button, Defendant Wilkes called the Orange Beach Police and the Orange Beach High School's Resource Officer.

109.   When Kelly Colley approached Defendant Randy Wilkes and asked for an explanation, Defendant Wilkes refused to acknowledge Kelly Colley's presence and would not answer any of her questions.  Defendant Wilkes simply ignored Kelly Colley and walked away.

110.   However, John W informed his mother, Kelly Colley, that Defendant Wilkes and Defendant Kennon were falsely accusing him of "striking" his mother" and telling him that he would be "facing expulsion."

111.   Neither Defendant Wilkes nor any Orange Beach Police Officer ever asked Kelly Colley what may have happened or if her son in fact had hit her.

112.   John R then asked Defendant Morales, "What is going on."  Defendant Morales replied, "They said he hit his mom."

113.   The Orange Beach City Police soon arrived, and in public view before the large crowd attending the Orange Beach High School football game, the City's police officers escorted John W, John R and Kelly Colley off the field and to their vehicles.  City Police Officer Joey Brown was the first officer on-site and, with Officer Vidal Banks and Officer Paiton Hudson, instructed John W, John R and Kelly Colley to leave the property or they would be arrested for trespassing.

114.   When Kelly Colley later asked Defendant Kennon why they had been forced to leave the property, Defendant Kennon merely responded, "I don't get involved in school discipline."

115.   On the following day, August 26, 2023, John R Colley spoke with Defendant Coach Nix, and first learned that Defendant Forbess, the Orange Beach City Schools Doctor had given John W Zofran, a prescription medication, during the football game on August 25, 2023.  At the time, John W was taking three other

prescription medications, and no one had authorized Defendant Morales, Defendant Coach Nix, Defendant Forbess, or any other coach, to give Zofran, or any other prescription medication, to John W.

116.   At no time had Defendant Forbess, Defendant Coach Nix, Defendant Morales, or any coach asked if John W if he was taking any other prescription medications.

117.   Also, on August 26, 2023, John R spoke with Defendant Coach Nix, Defendant Principal Chris Shaw, and Defendant Morales, the Orange Beach City Schools' Athletic Director, and confirmed that Defendant Forbess had given John W the prescription medication Zofran during the football game on August 25, 2023.

118.   John R again confirmed that no one had attempted to learn whether John W was on any other medication at the time, and no person, including Defendant Morales, Defendant Nix and Defendant Forbess, monitored John W, as required, after giving him Zofran during the football game on August 25, 2023.

119.   Zofran, a prescription medication, may cause serious side effects, including headache, constipation, diarrhea, fatigue and drowsiness, dizziness, flushing, blurred vision or temporary vision loss, slow heart rate, and severe allergic reactions, including rash, itching, swelling, and difficulty breathing.  Other side effects include fast or irregular heartbeat, fainting, or dizziness and, when taken with

other medications may cause confusion, rapid heartbeat, muscle spasms, chest pain or discomfort, nausea, and sweating.

120.   On or about August 26, 2023, John R also spoke with Principal Chris Shaw and City Councilman Jeff Silvers, concerning the improper actions taken by Mayor Kennon and Superintendent Wilkes by calling the police and publicly escorting each of them from the property on August 25, 2023.

121.   City Councilman Jeff Silvers also expressed concern because he had received several disturbing phone calls from attendees at the game about the offensive behavior of the Mayor and the Superintendent and checking to see if John W was okay.  City Councilman Jeff Silvers also stated that "They have been told several times not to be involved in school activities."

122.   Several days later, on August 28, 2023, Defendant Chris Shaw scheduled a meeting with John W, John R, and Kelly Colley.   Defendant Scott Cook and Defendant Morales were also present at this meeting.  At no time had anyone provided John W, John R, and Kelly Colley the Procedural Safeguards/Special Education Rights Manual as requested and required.

123.   At this meeting on August 28, 2023, Defendant Chris Shaw instructed John W to write an "incident statement," confirming all that occurred at the football game on August 25, 2023. Due to John W's learning disability Kelly Colley assisted John W in writing the statement.

124.   Also, at this meeting, John R asked Defendant Shaw whether the individuals assigned to work with John W at the Orange Beach High School were adequately trained and whether they had reviewed John W's IEP and BIP.

125.   John R also asked Defendant Shaw whether Defendant Wilkes was aware of John W's IEP/ BIP at the time he had grabbed John W at the football game on August 25, 2023.

126.   John R further asked Defendant Shaw to explain who was going to receive John W's statement since the incident at the football game also involved Defendant Wilkes, the OBCS Superintendent.

127.   In response to each John R's questions, Defendant Shaw did not respond and did not confirm what training or information the OBCS individuals working with John W had received regarding his IEP and BIP.

128.   Upon disregarding John R's questions, and immediately after receiving John W's written statement, the tone of the meeting quickly shifted, and Defendant Shaw asked whether John W had driven his car to school, and then asked whether John W possessed a firearm in his backpack.

129.   Principal Shaw's questions regarding whether John W possessed a firearm in his backpack was both bizarre and totally unfounded.

130.   After John R informed Defendant Shaw that John W had no possession of any firearm, and that John W had never been accused of any act in any way related

to a firearm, Defendant Shaw instructed John R and Kelly Colley to take John W home.

131.    Before leaving this meeting, Defendant Shaw informed John R and Kelly Colley he was going to schedule a Manifestation Determination Review (MDR) for John W, and that John W must stay away from the Orange Beach High School.

132.    This MDR was supposed to be a review or meeting to determine whether a student's "disciplinary infraction" may be a direct result of a student's disability and whether the OBCS had failed to properly implement John W's IEP.

133.    The following day, on August 29, 2023, the Orange Beach City Schools Special Education attorney, Julie Weatherly, Esq., informed John R that Defendant Shaw had been "mistaken" about the need to conduct a Manifestation Determination Review (MDR), and no MDR was conducted.

134.    Nonetheless, Attorney Julie Weatherly advised John R that the Orange Beach City Schools would want to make a determination of whether any disciplinary action should  be taken against John W, and that John W's attorney would have until August 30, 2023 to respond.

135.    On August 30, 2023, John R received an email from Attorney Julie Weatherly indicating the Orange Beach City Schools had not made a decision

concerning John W; but did not provide John R or John W with any further information or instruction.

136.   Also, on August 30, 2023, John W's attorney sent an email to Attorney Julie Weatherly asking for information as to when John W could again attend school and what, if any, discipline against John W was being considered by the OBCS, and for what reason.

137.   On September 1, 2023, Orange Beach High School and Heather Wallace, on behalf of Kylie Burleson, scheduled an IEP meeting with John W, John R, Kelly Colley and John W's attorney for September 6, 2023, to be held at the Orange Beach Middle and High School.  However, no one with OBCS provided John W, John R, Kelly Colley and John W's attorney with any explanation or documentation confirming John W's rights afforded by his IEP, the IDEA, or Section 504 of the Rehabilitation Act; and OBCS and each of its officers denied John W these rights.

138.   In fact, OBCS had not informed John W's teachers and coaches of John W's IEP and any rights provided John W by the IEP.

139.   Also, for five (5) days, John W had not been allowed to return to school, and no one had provide him, John R or Kelly R with any information of any discipline referral, or with any information or instruction as to why John W was not allowed to attend school.

140.    Defendant Chris Shaw also informed John R and Kelly Colley that John W must remain home and could not come to school at any time before this meeting scheduled for September 6, 2023.

141.    Still, no one had provided John R, Kelly Colley, John W, or John W's attorney, any information regarding the basis for any disciplinary action being taken by the Orange Beach City Schools against John W, including why John W could not attend school.

142.    Ironically, also on or about September 1, 2023, Defendant Rivers Devoe was observed parked just two doors down from the Colley family residence. That afternoon, when John W returned home briefly for lunch, he informed his father, John R Colley, he had noticed a police vehicle parked a few houses away. Mr. Colley reassured his son and advised him not to be concerned, instructing him to return to work. John W then proceeded back to his place of employment at the marina.

143.    However, shortly thereafter, Defendant Devoe followed John W back to the marina and, without warning or lawful justification, falsely arrested John W on vague and unsubstantiated grounds for committing an "alleged crime in the community."

144.    No specific charge was articulated to John W at the time of arrest. As John W attempted to inform Defendant Devoe that his mobile phone—left on the

golf cart—was exposed to the rain, Defendant Devoe retrieved the device and, in a deliberate and retaliatory act, dropped it to the ground, causing it to break.

145.    Only after taking John W to jail did Defendant Devoe or other Orange Beach police officers falsely accuse and charge John W with 3rd degree burglary and 4th degree theft of property.

146.    In strict violation of Alabama law, Defendant Devoe and the Orange Beach Police Department informed the OBSC and others that John W had been arrested.

147.    Four days later, on September 5, 2023, in strict violation of Alabama law, Defendant Chris Shaw notified John R and Kelly Colley that John W had reportedly broken a "school code of conduct" for allegedly committing a violent crime.   However, Defendant Shaw still had not provided John W, John R or Kelly Colley the Procedural Safeguards/ Special Education Rights.

148.    Defendant Shaw then informed John R and Kelly Colley that John W had been suspended, pending a hearing before Defendant Joe Blevins, Director of Personnel Operations and Student Services, due to an "alleged crime in the community" committed by John W.

149.    The OBCS further canceled the IEP meeting scheduled for September 6, 2023, and scheduled a "due process hearing with the hearing officer" for John W on September 11, 2023.  At this time, John W had not been allowed to attend school

for a period of ten (10) days in violation of Procedural Safeguards/ Special Education Rights and Alabama law, including

150.   Also, Orange Beach City Schools did not allow John W to attend the high school's senior graduation meeting with Jeff Jones on September 6, 2023.

151.   On September 8, 2023, Orange Beach City Schools did not allow John W to attend the taking of the high school's annual Yearbook pictures.

152.   Without providing Plaintiffs with any rules or procedures, on September 11, 2023, the Orange Beach City Schools held John W's alleged "due process hearing." Attending this hearing were Defendant Joe Blevins, Nash Campbell, Defendant Chris Shaw and other unknown individuals.    However, Defendant Shaw and no other OBCS official had provided John W, John R or Kelly Colley with the required Procedural Safeguards/Special Education Rights.

153.   Also, prior to this "hearing," the OBCS had not provided any information or any evidence to John R, Kelly Colley, John W, or John W's attorney about any allegations supporting the hearing, in strict violation of Alabama law.

156.   Immediately following this alleged "hearing," John R and Kelly Colley received a letter from Joe Blevins stating that John W had been assigned to a virtual program until "any appropriate authorities had disposed of any criminal charges" as recently alleged, again in violation of Alabama law.

157.   While in this virtual program, John W was required to show progress toward credits and maintain good grades.

158.   In direct violation of Alabama Code (1975) §16-1-14, §16-28-12, § 504 of the Rehabilitation Act of 1973; and Title II of the Americans with Disabilities Act as Amended, the OBCS and its officers prohibited John W from entering any Orange Beach City School property without explicit permission of the administration; and prohibited John W from attending or participating in any extracurricular activities or school sponsored events involving Orange Beach City Schools.

159.   The letter from Defendant Joe Blevins concluded that any violation by John W of this OBCS directive may result in disciplinary action.

160.   On the following day, September 12, 2023, John R, Kelly Colley and John W attended an IEP Meeting with Kylie Burleson, Nash Campbell, Heather Wallace, Lisa Rogula (an asserted Mental Health Coordinator without any Mental Health credentials).   Defendant Kylie Burleson began this meeting by falsely asserting: "We see a pattern of behavioral concerns with your son [John W]."

161.   On September 12, 2023, at John W's IEP meeting, Kylie Burleson mentioned the occurrence at the football game on August 25, 2023, as referenced above; and also, John W's unwarranted arrest by the City of Orange Beach Police on September 1, 2023.   Although John R reiterated the inadequate IEP testing and unqualified IEP teachers Orange Beach City Schools provided to John W, Kylie

Burleson concluded she wanted John W to attend weekly meetings with the OBCS Mental Health Coordinator, Ms. Lisa Rogula. Kylie Burleson did not identify Ms. Lisa Rogula's experience or credentials).   After this meeting, on September 12, 2023, at 3:55 p.m., Defendant Kylie Burleson sent John R her "meeting notes" that included several false and inaccurate statements.  Defendant Kylie Burleson falsely indicated that John W had established a pattern of using profanity toward school staff, skipping class, defiance, and acting aggressive toward his mother; and also made specific reference to John W's recent wrongful and false arrest that occurred on September 1, 2023.

162.   John R and Kelly Colley firmly disagreed with these "meeting notes" and repeatedly requested Defendant Kylie Burleson to remove any notes about John W that were either inaccurate or untrue.  Burleson refused, and assigned John W to "virtual online learning" rather than to any IEP at the Orange Beach High School

163.   Later, on September 12, 2023, John R also received an email from Defendant Shaw. In this email, Principal Shaw stated any decision to allow John W to participate in his class graduation ceremony would be made at a later date; and John W must meet "all graduation requirements" and have "no future issues either in school or in the community."

164.   On September 13, 2023, John R sent an email to Defendant Kylie Burleson stating, despite his prior requests, he had still not received any incident

report or disciplinary documentation in connection with the events that occurred at the football game on August 25, 2023, and originally addressed in an email sent on August 29, 2023.

165.  On the following day, September 14, 2023, John R received a "discipline referral" from Orange Beach City Schools signed by Assistant Principal Defendant Scott Cook.  At this time, John W already had been prohibited from attending school with no instruction for 12 days.

166.  On September 15, 2023, John R first learned that John W's Orange Beach City School teacher since 9th grade, Pam Green, was a paraprofessional, and possibly not IEP qualified to teach John W.

167.  On September 19, 2023, John R spoke with Bernice Rush-Harrison at the Alabama Board of Education, who provided John R with a "Special Education Complaint Packet."

168.  On October 1, 2023, John R requested information from Tracey Dubose, about the upcoming college fairs being hosted off campus by other school districts.

169.  After receiving no information as requested, John R again requested this information from Tracey Dubose on October 6, 2023, October 12, 2023, and October 14, 2023. Again, John R received no information regarding the upcoming college fairs as requested.

170.   Finally, on October 15, 2023, John R received notice from Tracey Dubose that John W was <u>not</u> permitted to attend the college fair at the Daphne Civic Center, an off-campus event not sponsored by OBCS.

171.   On December 13, 2023, OBCS and Defendant Kylie Burleson held a second IEP Meeting with John R, Kelly Colley and John W.  At this meeting, John R requested an update on the testing that was requested months earlier on May 4, 2023, and reiterated OBCS's many IEP violations that occurred since August 25, 2023.

172.   Also, on December 13, 2023, John R sent an email to Defendant Kylie Burleson again requesting her to correct or remove the inaccurate meeting notes she had represented and presented in September 2023.

173.   On December 18, 2023, Defendant Kylie Burleson emailed John R asserting she would neither correct nor remove her meeting notes.   These notes of Defendant Burleson were never accepted nor approved by John R and Kelly Colley.

174.   On January 3, 2024, OBCS held another IEP meeting with John R to again discuss the testing that had been requested by john R eight (8) months earlier, on May 4, 2023.

175.   On January 23, 2024, John R received an email from Robbie Smith, Director of Curriculum and Instruction, at the Orange Beach Board of Education stating that John W would need to take Alabama Civics exam to earn his diploma.

However, as of January 2024, John W had never received Alabama Civics instruction, nor been part of any Alabama Civics classes with the OBCS.

176.   During this same period of time, on January 26, 2024, John R filed a police report with the Orange Beach Police Department concerning David Fields Williams' unlawful harassment taken against John W on January 26, 2024 at the Orange Beach Recreational Center between 6:00 p.m. and 7:00 p.m.. Officer Devoe responded and informed John R or John W would have to speak to the magistrate.

177.   On January 29, 2024, John R personally requested the Orange Beach Police Department to provide a copy of his police report filed on January 26, 2024; and was initially informed by police that "no report was made." However, after waiting several minutes, the Orange Beach Police Department provided John R a redacted report that also read "no report."

178.   On February 5, 2024, the Orange Beach Board of Education advised John R that the Board would require John W's FAFSA or a FAFSA waiver in order to graduate.

179.   Several days later, on February 8, 2024, John W took the Alabama Civics Exam at the Orange Beach Board of Education where Defendant Randy Wilkes attempted to engage with John W.

180.   Also, on February 8, 2024, John R sent emails to several school administrators at OBCS, advising that John W had completed all requirements, and requesting when John W could receive his diploma.

181.   On February 8, 2024, Robbie Smith, Director of Curriculum and Instruction for OBCS, called John R and advised that John W would no longer be required to complete the IEP testing to receive his diploma.  This is the same IEP testing John R and Kelly Colley had requested earlier on May 4, 2023.

182.   Despite this advice from Robbie Smith, on February 15 and February 16, 2024, John W completed any and all IEP testing with Connie McNab, the OBCS Psychologist.   Rather than lasting eight (8) hours as when previously tested, this testing lasted less than an hour, and Connie McNab explained this was due to John W's age and the use of "a different type of testing."

183.   On February 16, 2024, John R sent OBCS's administrators several emails concerning John W again advising that John W had completed all requirements, and requesting when John W could receive his diploma.

184.   Three days later, on February 19, 2024, John R received a letter confirming John W had met all requirements to graduate.

185.   One week later, on February 23, 2024, John R, Kelly Colley and John W had a final IEP meeting to review John W's IEP testing scores.

186.  On February 28, 2024, Kelly Colley sent Defendant Principal Chris Shaw, Defendant Joe Blevins, and OBCS's Attorney, Nash Campbell, with Adams and Reese, LLP,  an email confirming John W had diligently fulfilled, with adequate documentation, all the necessary requirements for John W to graduate and his request to participate in the graduation ceremony.  However, no one responded to Kelly Colley's information and request.

187.  On the following day, February 29, 2024, Orange Beach City Police Officers Defendant River Devoe and Defendant Alisa Dixson arrived at the Colley's residence at 5472 Bear Point Ave., Orange Beach, AL.  Without warrant, suspicion, probable cause or any permission, Defendant Devoe and Defendant Dixson removed John W outside his residence and onto the front porch of the house.  Defendant Devoe then entered the Plaintiffs' residence, demanded possession of John W's cell phone, and threatened that if the cell phone was not immediately provided to him, John W was going to jail.

188.  When John R arrived at his residence and learned what had occurred at his residence, he immediately called Chief of Police for Orange Beach, Steve Brown, and questioned what was going on, and why Defendant Devoe and Defendant Dixson had entered his residence and taken John W's cell phone without a warrant. Chief Brown simply responded that the officer handling the case was Officer Jennifer Croll.

189.    After unlawfully entering the Colley's residence and unlawfully taking John W's cell phone, the City of Orange Beach Police Department retained John W's cell phone for approximately one week until March 5, 2024.

190.    Finally, upon receiving permission from the City's police department and retrieving John W's cell phone at the Orange Beach Police Department, the cell phone was in a clear plastic "evidence bag." The bag was signed by Officer Brandon Bordelon, and the cell phone's sim card had been removed.

191.    As evidenced, John W's cell phone had been in the possession of the Orange Beach Police officers who had falsely arrested John W on September 1, 2023.

192.    When John R contacted the State Board of Education concerning the unlawfully amended OCBS Code of Conduct, a Ms. Dees immediately transferred John R to speak with Ayanna Long, a team member of Autumm Jeter, the Alabama Board of Education Assistant Superintendent "Defendant Jeter." After sending an email to Ms. Long, John R was scheduled for a conference call with Defendant Jeter on March 13, 2024.

193.    On March 13, 2024, John R had an hour-long telephone conversation with the Alabama Board of Education Assistant Superintendent Dr Autumm Jeter "Defendant Jeter" and her team at the State Board of Education about John W's many issues with the Orange Beach City High School, including how the OBCS had

changed its rules without the State Board's approval; how the school doctor, Dr. Forbess, had unlawfully administered a prescription medication to John W during a football game; and how Defendant Wilkes had physically and mentally assaulted and harassed John W.

194.    John R also informed Defendant Jeter about how the OBCS had amended its code of conduct to include alleged "out of school violent criminal conduct" without the approval of the State Board of Education.

195.    However, Defendant Jeter, and no other officer at the State Board of Education, took any action to correct, remedy or prevent the OBSC from passing and enforcing rules and policy and was in direct violation of Alabama law, and Alabama State Board of Education Rules and Policy.

196.    When preparing a complaint to the Alabama Board of Education as instructed, John R became aware that the Orange Beach High School once again had amended its Code of Conduct addressing "out of school violent criminal conduct" and without approval of the State Board of Education.

197.    Again, Defendant Jeter had taken no action to correct or prevent the OBSC from passing and enforcing rules and policy and was in direct violation of Alabama law, and Alabama State Board of Education Policy.

198.    Shortly thereafter, on March 20, 2024, the OBCS decided it would not allow John W to attend his Senior Class Meeting at the Orange Beach High School.

199.   At no time did the OBCS provide John W with Cap and Gown order information and John W was not provided Cap and Gown photo information.

200.   Shortly thereafter, on April 5, 2024, John R received a call from John W that the Orange Beach police were at John W's job site and parked behind John W's car in the Swift Supply employee parking area.

201.   After receiving this call from John W, John R immediately called Lt. Johnson at the Orange Beach City Police Department and asked if there was any problem with John W's car, and why a police officer had parked behind John W's car in the employee parking area.  John R received no explanation from any Orange Beach police officer.

202.   On April 13, 2024, the OBCS informed John R that John W was not allowed to attend his Senior Prom.

203.   On April 26, 2024, an officer of the Orange Beach City Police Department closely followed John W down Canal Road until John W left the Orange Beach city limits.  Shortly afterward, a Gulf Shores City Police officer pulled John W over and demanded to see his ID and proof of insurance. The Gulf Shores police officer informed John that the Orange Beach City Police had called the Gulf Shores police asking to check his car. After checking John W's license and registration, John W was allowed to leave.

204.   On May 3, 2024, the OBCS did not allow John W to attend his Senior Ride and Senior Dinner.

205.   On May 9, 2024, the OBCS did not allow John W to attend his Senior Walk in Cap and Gown.

206.   On May 10, 2024, the OBCS did not allow John  W to attend the Senior Awards and Scholarship Day.  Although John W had earned a scholarship, he was not allowed to receive the scholarship on campus.

207.   On May 14, 2024, the OBCS did not allow John W to attend his Senior Graduation Rehearsal and Baccalaureate.

208.   On May 16, 2024, the OBCS did not allow John W to attend his Senior Graduation.

209.   On May 17, 2024, John R received a call from City Councilman Jeff Silvers.  Councilman Silvers asked to deliver a Senior Graduation Program to John R since John W's name was listed in the Program as a member of the Class of 2024.

201.   Also, on May 17, 2024, John W, by and through his parents, requested a due process hearing pursuant to the IDEA and all other applicable laws.

202.   In the due process hearing request, John W sought relief, inter alia, for the denial of a free appropriate education to John W from August 2023 to the time of the hearing request.

203.   In the due process hearing request, John W sought to ensure he had exhausted all administrative remedies allowed by law and requested he be allowed to do so.

204.   In the due process hearing request, John W raised, inter alia, OBCS's denial of a free appropriate public education ("FAPE") to John W from August 2023 forward.

205.   On May 28, 2024, the Orange Beach Board of Education conducted a Complaint Resolution Meeting with John R via zoom with Ken Baumann, Attorney representing John W.

206.   After a hearing was conducted, the OBCS agreed to provide John W certain academic tutoring and/or counseling as any services owed to John W, and the pending due process hearing request in 2024-78 was ordered dismissed, thereby exhausting John W's administrative remedies.

207.   Three and one-half months after the Complaint Resolution Meeting on May 28, 2024, Defendant Wilkes issued a document representing a resolution and his signature dated *August 16, 2023*.

208.   Thereafter, on August 4, 2024, officers of the Orange Beach Police Department stopped Alayna Perrott while driving for allegedly following too closely.  John W was a passenger of Ms. Perrott's car.

209.   The Orange Beach Police officers, Defendant Brandon Bordelon and other City police officers placed John W in the back of a patrol car and turned the patrol car off causing each to suffer excessive heat.   Defendant Bordelon detained both Ms. Perrott and John W for at least forty-five minutes, and unlawfully searched Ms. Perrott, John W, John W's mouth and Ms. Perrott's vehicle.

210.   During this unlawful stop, unlawful detention, and unlawful search, Defendant Bordelon asserted to Ms. Perrott, "she needed to stay away from John W. He was bad news."

211.   On September 20, 2024, John R received a letter from the Alabama Medical Examiners that the Complaint filed against Dr Ryan Forbess with the Alabama Board of Medical Examiners had been closed, although Dr Ryan Forbess' office and the Orange Beach City School Nurse had provided no documentation for approving or providing prescription medication during the football game.

## IV. CAUSES OF ACTION

### COUNT I

### VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973 AGAINST CITY OF ORANGE BEACH ("CITY") AND ORANGE BEACH CITY SCHOOLS ("OBCS")

212.   Plaintiffs incorporate for reference and information to any named Defendant in this Count, the specific preceding paragraphs 25-80, 122-175, 178-186, 192-199, and 204-207, as if fully restated herein.

213.   More specifically, and named pursuant to 42 U.S.C. § 1983, this count is brought against the City of Orange Beach ("City") and Orange Beach City Schools (hereinafter "OBCS") pursuant to § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (hereinafter "Section 504").

214. Section 504 and the regulations promulgated thereunder prohibit discrimination against persons with disabilities and the exclusion from participation in, or denial from the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance.

215.   At all times material hereto, Defendant City and Defendant OBCS were each recipients of federal financial assistance and used federal financial assistance to fund the operations, construction and/or maintenance of the specific public facilities described herein, including OBCS, and the many activities that take place therein.

216.   By its actions or inactions in denying equal access to educational services and by subjecting John W to a hostile educational environment and removing him from school, Defendant City and Defendant OBCS violated John W's rights under § 504 and the regulations promulgated thereunder.

217.   As a direct and proximate cause of the City's failure and OBCS's failure to comply with its responsibilities under § 504 and the regulations promulgated thereunder, John has suffered damages, pain and suffering, loss of

enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff John W respectfully prays that this Court grant the following relief:

a.    Judgment declaring that the City and OBCS violated John W's rights under § 504 and the regulations promulgated thereunder.

b.    An award of compensatory damages, including damages for mental anguish and emotional distress, to which John W may be entitled;

c.    Any equitable relief as requested and ordered by the Court;

d.    An award of punitive damages as allowed;

e.    An award of all costs and reasonable attorneys' fees as allowed by law and by 29 U.S.C. § 794a(2)(b); and

f.    Such other relief as the Court deems appropriate.

## COUNT II

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED AGAINST THE CITY OF ORANGE BEACH AND ORANGE BEACH CITY SCHOOLS ("OBCS")

218.    Plaintiffs incorporate for reference and information to any named Defendant in this Count, the specific preceding paragraphs 25-80, 122-175, 178-186, 192-199, and 204-207, as if fully restated herein.

219.   More specifically, and named pursuant to 42 U.S.C. § 1983, this count is brought against the City of Orange Beach ("the City") and Orange Beach City Schools (hereinafter "OBCS") pursuant to Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131 et, seq. (hereinafter "ADAAA").

220.   The ADAAA and the regulations promulgated thereunder prohibit discrimination against persons with disabilities and the exclusion from participation in, or denial from the benefits of, or being subjected to discrimination under, any program or activity provided and subject to the ADAAA.

221.   At all times material hereto, Defendant City and Defendant OBCS each was subject to any and all requirements of the ADAAA and the regulations promulgated thereunder.

222.   By its actions or inactions in denying equal access to educational services and by subjecting John W to a hostile educational environment and removing his from school, Defendant City and Defendant OBCS violated John W's rights under the ADAAA and the regulations promulgated thereunder.

223.   As a direct and proximate cause of the City's failure and OBCS's failure to comply with its responsibilities under the ADAAA and the regulations promulgated thereunder, John W has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff John W respectfully prays that this Court grant the following relief:

a.    Judgment declaring that the City and OBCS violated John's rights under the ADAAA and the regulations promulgated thereunder.

b.    An award of compensatory damages, including damages for mental anguish and emotional distress, to which John may be entitled;

c.    Any equitable relief as requested and ordered by the Court;

d.    An award of punitive damages as allowed;

e.    An award of all costs and reasonable attorneys' fees as allowed by law and by 42 U.S. Code § 12205.

f.    Such other relief as the Court deems appropriate.

## COUNT III

### RETALIATION
### IN VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973
### AGAINST THE CITY OF ORANGE BEACH AND
### ORANGE BEACH CITY SCHOOLS ("OBCS")

224.    Plaintiffs incorporate for reference and information to any Defendant named in this Count, the specific preceding paragraphs 25-80, 122-175, 178-186, 192-199, and 204-207, as if fully restated herein.

225.    More specifically, and named pursuant to 42 U.S.C. § 1983, this count is brought against the City of Orange Beach ("the City") and Orange Beach City

Schools (hereinafter "OBCS") pursuant to § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (hereinafter "Section 504").

226.  Section 504 and the regulations promulgated thereunder prohibit retaliation against persons with disabilities and the exclusion from participation in, or denial from the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance.

227.  At all times material hereto, Defendants City and OBCS each was a recipient of federal financial assistance and used federal financial assistance to fund the operations, construction and/or maintenance of the specific public facilities described herein, including OBCS, and the many activities that take place therein.

228.  By its actions or inactions in denying equal access to educational services and by subjecting John W to a hostile educational environment and removing him from school, Defendants City and OBCS retaliated against John W and denied John W his rights under § 504 and the regulations promulgated thereunder.

229.  As a direct and proximate cause of each Defendants' retaliation in violation of § 504 and the regulations promulgated thereunder, John W has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff John W respectfully prays that this Court grant the following relief:

a.     Judgment declaring that Defendants City and Defendant OBCS retaliated against John W in denying his rights under § 504 and the regulations promulgated thereunder.

b.     An award of compensatory damages, including damages for mental anguish and emotional distress, to which John may be entitled;

c.     Any equitable relief as requested and ordered by the Court;

d.     An award of punitive damages as allowed;

e.     An award of all costs and reasonable attorneys' fees as allowed by law and by 29 U.S.C. § 794a(2)(b); and

f.     Such other relief as the Court deems appropriate.

## COUNT IV

### RETALAITION
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### AS AMENDED AGAINST THE CITY OF ORANGE BEACH AND
### ORANGE BEACH CITY SCHOOLS ("OBCS")

230.   Plaintiffs incorporate for reference and information to any named Defendant in this Count, the specific preceding paragraphs 25-80, 122-175, 178-186, 192-199, and 204-207, as if fully restated herein.

231. More specifically, and named pursuant to 42 U.S.C. § 1983, this count is brought against the City of Orange Beach ("the City") and Orange Beach City Schools (hereinafter "OBCS") pursuant to Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131 et, seq. (hereinafter "ADAAA"), for retaliation.

232. The ADAAA and the regulations promulgated thereunder prohibit retaliation against persons with disabilities requesting participation in, and benefits provided under the ADAAA.

233. At all times material hereto, Defendant City and Defendant OBCS each was subject to any and all requirements of the ADAAA and the regulations promulgated thereunder.

234. By its actions or inactions in denying equal access to educational services and by subjecting John W to a hostile educational environment and removing him from school, Defendants City and OBCS retaliated against John in violation of John W's rights under the ADAAA and the regulations promulgated thereunder.

235. As a direct and proximate cause of Defendant City's retaliation and OBCS's retaliation and failure to comply with its responsibilities under the ADAAA and the regulations promulgated thereunder, John has suffered damages, pain and

suffering, loss of enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff John W respectfully prays that this Court grant the following relief:

a.    Judgment declaring that Defendant City and Defendant OBCS retaliated against John W by violating and denying John's rights under the ADAAA and the regulations promulgated thereunder.

b.    An award of compensatory damages, including damages for mental anguish and emotional distress, to which John may be entitled;

c.    Any equitable relief as requested and ordered by the Court;

d.    An award of punitive damages as allowed;

e.    An award of all costs and reasonable attorneys' fees as allowed by law and by 42 U.S. Code § 12205.

f.    Such other relief as the Court deems appropriate.

## COUNT V

**VIOLATION OF THE SUBSTANTIAL DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT BY DEFENDANTS CITY OF ORANGE BEACH, ORANGE BEACH CITY SCHOOLS , AND DEFENDANTS WILLIAM R. WILKES, CHRIS SHAW, SCOTT COOK, KYLIE BURLESON, JOE BLEVINS, ROBERTO MORALES, JR., RANDY MCKINNEY AND AUTUMM JETER, EACH IN HIS OR HER INDIVIDUAL CAPACITY**

236.    Plaintiffs incorporate for reference and information to any named Defendant in this Count, the specific preceding paragraphs 25-80, 122-175, 178-186, 192-199, and 204-207, as if fully restated herein.

237.    More specifically, this count is brought pursuant to 42 U.S.C. §1983 against the City of Orange Beach ("the City"), Orange Beach City Schools (hereinafter "OBCS") and Defendants William R. Wilkes, Chris Shaw, Scott Cook, Kylie Burleson, Joe Blevins, Roberto Morales, Jr., Randy McKinney and Autumm Jeter, each in his/her individual capacity, for the violation of the Due Process Clause of the Fourteenth Amended to the United States Constitution ("the Fourteenth Amendment").

238.    The Substantive Due Process Clause of the Fourteenth Amendment prohibits the taking on one's property right, including public education, and prohibits the taking such right from persons with disabilities and the exclusion from participation in, or denial from the benefits.

239.    Amendment 111 of the Alabama Constitution (1901) provides authority to the Alabama legislature to provide for or authorize establishment and operation of Alabama's schools for its citizens and it is the policy of the State of Alabama to foster and promote the education of its citizens in a manner and extent consistent with its available resources.

240.    Moreover, pursuant to Alabama Code (1975) §16-1-14, any city, county, or other local public school board shall, consistent with Ala. Code (1975) §16-28-12, prescribe rules and regulations with respect to behavior and discipline of pupils enrolled in the schools under its jurisdiction. Any and all local rules and regulations adopted pursuant to this section shall first be approved by the State Board of Education.

241.    Also, pursuant to Alabama Code (1975) §16-1-14, any such removal, isolation, or separation from the school may not deprive such pupils of their full right to an equal and adequate education.

242.    At all times material hereto, John W was entitled to his full right to an equal and adequate education under § 504 of the Rehabilitation Act of 1973; Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131; and applicable Alabama law.

243.    By its actions in denying equal access to educational services and by subjecting John W to a hostile educational environment, removing him from participation in school, and disallowing John W to his full right to an equal and adequate education under federal and Alabama law, Defendants William R. Wilkes, Chris Shaw, Scott Cook, Kylie Burleson, Joe Blevins, Roberto Morales, Jr., Randy McKinney and Autumm Jeter, each in his/her individual capacity, acted to violate

John's rights under the Due Process Clause to the Fourteenth Amendment to the United States Constitution.

244.    In addition, the City and the OBCS deprived John W of his constitutional right to his full right to an equal and adequate education by either an express policy or a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law.

245.    Even in the absence of an express policy or custom, the City and the OBCS is liable for a single act or decision of the municipal official(s) with final policymaking authority in the area of the act or decision to deprive of John W of his constitutional right to his full right to an equal and adequate education. Officials with this authority and decision-making authority included Defendants William R. Wilkes, Chris Shaw, Scott Cook, Kylie Burleson, Joe Blevins, Roberto Morales, Jr., Randy McKinney and Autumm Jeter.

246.    As a direct and proximate cause of each Defendant's violations of the Fourteenth Amendment, John W has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff John W respectfully prays that this Court grant the following relief:

a.    Judgment declaring that the City, the OBCS, and Defendants William R. Wilkes, Chris Shaw, Scott Cook, Kylie Burleson, Joe Blevins, Roberto Morales, Jr., Randy McKinney and Autumm Jeter, each in his/her individual capacity, violated John's rights under the Fourteenth Amendment to the United States Constitution; § 504 of the Rehabilitation Act of 1973; Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131; and applicable Alabama law;

b.    An award of compensatory damages, including damages for mental anguish and emotional distress, to which John W may be entitled;

c.    Any equitable relief as requested and ordered by the Court;

d.    An award of punitive damages as allowed;

e.    An award of all costs and reasonable attorneys' fees as allowed by law;

f.    Such other relief as the Court deems appropriate.

## COUNT VI

**CONSPIRACY IN VIOLATION OF THE SUBSTANTIAL DUE PROCESS COUSE OF THE FOURTEENTH AMENDMENT BY DEFENDANTS CITY OF ORANGE BEACH, ORANGE BEACH CITY SCHOOLS , AND WILLIAM R. WILKES, CHRIS SHAW, SCOTT COOK, KYLIE BURLESON, JOE BLEVINS, ROBERTO MORALES, JR., RANDY MCKINNEY AND AUTUMM JETER, EACH IN HIS OR HER INDIVIDUAL CAPACITY**

247.    Plaintiffs incorporate for reference and information to any named Defendant in this Count, the specific preceding paragraphs 25-80, 122-175, 178-186, 192-199, and 204-207, as if fully restated herein and as asserted in Count V.

248.   Plaintiff John W states a claim for civil conspiracy under 42 U.S.C. § 1985(3) by alleging against each named Defendant listed in this Count above: (1) a violation of Plaintiffs' federal rights under color of state law by at least one state actor; (2) an "understanding" among the defendants to violate those rights; and (3) a resultant "actionable" harm."

249.   More specifically, this count is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985(3) against the City of Orange Beach ("the City"), Orange Beach City Schools (hereinafter "OBCS") and Defendants William R. Wilkes, Chris Shaw, Scott Cook, Kylie Burleson, Joe Blevins, Roberto Morales, Jr., Randy McKinney and Autumn Jeter, each in his/her individual capacity, for conspiring to violate and violating Plaintiff's right to Substantive Due Process pursuant the Substantive Due Process Clause of the Fourteenth Amended to the United States Constitution ("the Fourteenth Amendment").

250.   The Substantive Due Process Clause of the Fourteenth Amendment prohibits the taking on one's property right, including public education, and prohibits the taking such right from persons with disabilities and the exclusion from participation in, or a denial of these rights.

251.   Amendment 111 of the Alabama Constitution (1901) provides authority to the Alabama legislature to provide for or authorize establishment and operation of Alabama's schools for its citizens and it is the policy of the State of Alabama to

foster and promote the education of its citizens in a manner and extent consistent with its available resources.

252.  Moreover, pursuant to Alabama Code (1975) §16-1-14, any city, county, or other local public school board shall, consistent with Ala. Code (1975) §16-28-12, prescribe rules and regulations with respect to behavior and discipline of pupils enrolled in the schools under its jurisdiction. Any and all local rules and regulations adopted pursuant to this section shall first be approved by the State Board of Education.

253.  Also, pursuant to Alabama Code (1975) §16-1-14, any such removal, isolation, or separation from the school may not deprive such pupils of their full right to an equal and adequate education.

254.  Moreover, at all times material hereto, John W was entitled to his full right to an equal and adequate education under § 504 of the Rehabilitation Act of 1973; Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131; and applicable Alabama law.

255.  The City and the OBCS deprived of John W of his constitutional right to his full right to an equal and adequate education by either an express policy or a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law.

256.   Even in the absence of an express policy or custom, the City and the OBCS liable for a single act or decision of the municipal official(s) with final policymaking authority in the area of the act or decision to deprive of John W of his constitutional right to his full right to an equal and adequate education.

257.   By acting together in denying equal access to educational services and by subjecting John W to a hostile educational environment and removing John W participation in school, Defendant City, Defendant OBCS, and Defendants William R. Wilkes, Chris Shaw, Scott Cook, Kylie Burleson, Joe Blevins, Roberto Morales, Jr., Randy McKinney and Autumm Jeter, each in his/her individual capacity, conspired together and violated John W's rights under the Substantive Due Process Clause to the Fourteenth Amendment to the United States Constitution; and provided by § 504 of the Rehabilitation Act of 1973; Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131; and applicable Alabama law.

258.   As a direct and proximate cause of each Defendant's actions taken together to violate John W's protections referenced above and protected by Fourteenth Amendment to the United States Constitution, John W has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff John W respectfully prays that this Court grant the following relief:

a.    Judgment declaring that Defendant City, Defendant OBCS, and Defendants William R. Wilkes, Chris Shaw, Scott Cook, Kylie Burleson, Joe Blevins, Roberto Morales, Jr., Randy McKinney and Autumm Jeter, each in his/her individual capacity, conspired, and otherwise acted together, to violate John W's rights protected by the Fourteenth Amendment to the United States Constitution; and provided by § 504 of the Rehabilitation Act of 1973; Title II of the Americans with Disabilities Act as Amended 42 U.S. Code § 12131; and applicable Alabama law;

b.    An award of compensatory damages, including damages for mental anguish and emotional distress, to which John may be entitled;

c.    Any equitable relief as requested and ordered by the Court;

d.    An award of punitive damages as allowed;

e.    An award of all costs and reasonable attorneys' fees as allowed by law;

f.    Such other relief as the Court deems appropriate.

**COUNT VII**

**VIOLATION OF THE FIRST AMENDMENT
AGAINST DEFENDANTS ANTHONY T. KENNON, JOEY BROWN AND
WILLIAM R. WILKES FOR THE
UNLAWFUL REMOVAL OF PLAINTIFFS FROM A PUBLIC FORUM**

259.   Plaintiffs repeat, reallege and incorporate by reference herein more specifically each the following paragraphs 84-141, above, the same as if more fully set forth herein.

260.   Defendant Anthony T. Kennon, Defendant Joey Brown, and William R. Wilkes are each named in his individual capacity.

261.   Plaintiffs John W, John C, and Kelly Colley bring this claim pursuant to 42 U.S.C. § 1983 for the violation of each named Plaintiff's legal rights provided by the First Amendment to the United States Constitution.

262.   Each Plaintiff has a constitutionally protected liberty interest to be on the City property of his choosing that is open to the public generally. See *City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849 1858, 144 L.Ed.2d 67 (1999) (plurality opinion) (citations omitted) ("[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' or the right to move 'to whatsoever place one's own inclination may direct.'").

263.   Whether or not this interest is a fundamental right for the purpose of substantive due process, a person may forfeit this liberty right only by trespass or other violation of law. *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir.1994). There is more than a sheer possibility that each Plaintiff was deprived of

a constitutionally protected liberty interest to remain on public property and at the Orange Beach football game on the evening of August 25, 2023.

264.   As in this case, John W was a member and athlete for the OBCS football team, and John C and Kelley Colley are John C's parents.   Each Plaintiff was a citizen of Orange Beach, Alabama, and participated in the OBCS.

265.   The Defendants' threats of criminal prosecution, not only actual prosecution, can create a restraint or even a prior restraint.

266.   At all material times, each Plaintiff was engaged in constitutionally protected activity on the evening of August 25, 2023.

267.   Defendants Anthony T. Kennon, William R. Wilkes, and Joey Brown, each sought to effect unlawful restraints on Plaintiffs by threatening to arrest Plaintiffs for criminal trespass if they did not leave the public property on the evening of August 25, 2023.

268.   The actions and retaliation by Defendants Anthony T. Kennon, William R. Wilkes, and Joey Brown injured each Plaintiff by restraining, preventing, and impairing each Plaintiff's exercise of his or her First Amendment rights, and did so in a way likely to chill a person of ordinary firmness from continuing to exercise those rights.

269.   These actions by Defendants Anthony T. Kennon, William R. Wilkes and Joey Brown each violated each Plaintiff's clearly established constitutional and

statutory rights and were unlawful in light of clearly established law. No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

270.   As a direct and proximate result of each Defendant's unlawful activity, each Plaintiff suffered, and continues to suffer, damages for which the Defendants are liable.

271.   Moreover, each Defendant's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

WHEREFORE. PREMISES CONSIDERED, Plaintiffs John W, John C, and Kelly Colley respectfully pray that this Court grant the following relief:

a.      Judgment declaring that each of the individually named Defendants acted in violation of each Plaintiff's First Amendment Rights under the U.S. Constitution;

d.      An order granting each Plaintiff compensation for rights to which Plaintiff would have been entitled, had Plaintiff not been the victim of a violation of his U.S. Constitutional Rights;

c.   An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

d.   Punitive damages as allowed by applicable law;

e.  An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief; and

f.  Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT VIII

## VIOLATION OF THE FOURTH AMENDMENT
## AGAINST DEFENDANT BRANDON BORDELON FOR
## FALSE ARREST AND UNLAWFUL SEARCH AND SEIZURE

272.　Plaintiffs repeat, reallege and incorporate by reference herein more specifically each the following paragraphs: 208-110, above, the same as if more fully set forth herein.

273.　Defendant Brandon Bordelon is named in his individual capacity, and at all relevant times, was an officer of the Orange Beach Police Department.

274.　Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 for the violation of each Plaintiff John W Colley's legal rights provided by the Fourth Amendment to the United States Constitution.

275.　The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

276.　Likewise, the Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV.

277.   At approximately 11:15 a.m. on August 4, 2024, Defendant Brandon Bordelon and other unidentified officers of the Orange Beach Police Department, forced Alayna Perrott to pull off the road and stop while driving her car in Orange Beach for allegedly following another vehicle too closely.  At that time, John W was a passenger of Ms. Perrott's car.

278.   After stopping Alayna Perrott, Defendant Brandon Bordelon and one or more unidentified officers, ordered and removed John W and Alayna Perrott from Ms. Perrott's car; placed handcuffs on John W, searched John W and John W's mouth, and placed John W in the rear of the 2nd police Tahoe.

279.   Defendant Brandon Bordelon and one or more unidentified officers also removed John W's cell phone from his possession.

280.   Defendant Brandon Bordelon, and one or more unidentified officers, then turned the patrol car off where John W had been ordered, causing John W to suffer from excessive heat and humidity.

281.   Defendant Brandon Bordelon and one or more unidentified officers, without probable cause or any reasonable suspicion, detained both Ms. Perrott and John W for approximately forty-five (45) minutes.

282.   Defendant Brandon Bordelon and one or more unidentified officers, unlawfully, without probable cause or any reasonable suspicion, physically searched Ms. Perrott's person, searched John W's person, including John W's mouth,

removed John W's cell phone from his possession, and further searched Ms. Perrott's vehicle.

283.   During this false arrest, unlawful detention, and unlawful search, the Defendant Brandon Bordelon falsely asserted to Ms. Perrott that "she needed to stay away from John. He was bad news."

284.   Defendant Brandon Bordelon's warrantless and unlawful detention and false arrest, and Defendant Bordelon's unlawful search and seizure were presumptively unreasonable, and occurred without any reasonable or articulable suspicion of any criminal activity.

285.   These unlawful actions by Defendant Brandon Bordelon and one or more unidentified officers, violated John W's clearly established constitutional and statutory rights, and Defendant Brandon Bordelon's actions were unlawful in light of clearly established law.  No reasonable person would have believed otherwise, given the state of the law and the Defendant's motivations.

286.   As a direct and proximate result of Defendant Brandon Bordelon's and one or more unidentified officers' unlawful activity, Plaintiff John W suffered, and continues to suffer, damages for which Defendant Bordelon and one or more unidentified officers are liable.

287.    Moreover, Defendant Brandon Bordelon's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter him and others from engaging in this type of unlawful conduct.

WHEREFORE. PREMISES CONSIDERED, Plaintiff John W respectfully prays that this Court grant him the following relief:

a.    Judgment declaring that the Defendant Brandon Bordelon violated the Plaintiff's Fourth Amendment Rights under the United States Constitution;

b.    An award of compensatory damages, including damages for mental anguish, to which Plaintiff John W may be entitled;

c.    Punitive damages as allowed by applicable law;

d.    An award of all court costs and reasonable attorneys' fees; and

e.    Such further, equitable, other and different relief as the Court may deem appropriate and necessary.

## COUNT IX

### VIOLATION OF THE FOURTH AMENDMENT
### AGAINST DEFENDANTS RIVERS DEVOE, ALISA DIXSON AND THE CITY OF ORANGE BEACH POLICE DEPARTMENT FOR THE UNLAWFUL ENTRY TO PLAINTIFFS' RESIDENCE AND UNLAWFUL TAKING OF PLAINTIFF'S PROPERTY

288.    Plaintiffs repeat, reallege and incorporate by reference herein more specifically each the following paragraphs: 187-191, above, the same as if more fully set forth herein.

289.   Defendant Alisa Dixson ("Defendant Dixson") and Defendant River Devoe ("Defendant Devoe") are each named in his or her individual capacity, and are each officers of the Orange Beach Police Department.

290.   Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983 for the violation of each named Plaintiff's legal rights provided by the Fourth Amendment to the United States Constitution.

291.   The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "very core" of the Fourth Amendment is the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); see also *Florida v. Jardines*, 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals.")

292.   The "chief evil" the Fourth Amendment protects against is a government agent's warrantless entry into a person's home. See *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). When an officer enters a person's home without a warrant and without consent, any resulting search or seizure violates the Fourth Amendment unless it was supported by probable cause and exigent circumstances. See id. at 587–90, 100 S.Ct. 1371.

293.   In this regard, Plaintiffs John W Colley, Kelly Colley and John R Colley had the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures by the City's agents, including the above-named defendants.

294.   On February 29, 2024, Orange Beach City Police Officers, Defendant Dixson and Defendant Devoe arrived at the Colley's residence at 5472 Bear Point Ave., Orange Beach, AL.

295.   Without warrant, without consent, and without any probable cause, officers Dixson and Rivers Devoe entered the Plaintiffs' residence.   Defendant Dixson and Defendant Devoe further demanded John W's cell phone, and threatened John W that if the cell phone was not immediately turned over to them, John W was going to be taken to jail.

296.   When John R Colley arrived at his residence and learning what had occurred, he immediately called Chief of Police for Orange Beach, Steve Brown, and ask Chief Brown for an explanation.   Chief Brown simply responded that the Officer handling the case was Jennifer Croll.

297.   After unlawfully entering the Colley's residence and unlawfully taking John W's cell phone, Defendant Dixson, Defendant Devoe and Defendant City of Orange Beach Police Department unlawfully retained John W's cell phone until March 5, 2024.

298.   Upon receiving permission and retrieving John W's cell phone at the Orange Beach Police Department, John's cell phone was in a clear plastic evidence bag and the phone's sim card had been removed.

299.   These actions by Defendant Dixson and Defendant Devoe violated each Plaintiff's clearly established constitutional and statutory rights, and each Defendant's actions were unlawful in light of clearly established law.  No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

300.   These actions by Defendant Dixson and Defendant Devoe was a custom and common practice of the City of Orange Beach Police Department and violated each Plaintiff's clearly established constitutional and statutory rights, and were unlawful in light of clearly established law.  No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

301.   As a direct and proximate result of each Defendants' unlawful activity, Plaintiffs suffered, and continue to suffer, damages for which Defendants are liable.

302.   Moreover, the Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

WHEREFORE. PREMISES CONSIDERED, Plaintiffs John W Colley, Kelly Colley and John R Colley respectfully pray that this Court grant each Plaintiff the following relief:

a.    Judgment declaring that the Defendant City of Orange Beach Police Department, and Defendant Alisa Dixson and Defendant River Devoe, in their individual capacities, violated each Plaintiff's Fourth Amendment Rights under the United States Constitution;

b.    An award of compensatory damages, including damages for mental anguish, to which each Plaintiff may be entitled;

c.    Punitive damages as allowed by applicable law;

d.    An award of all court costs and reasonable attorneys' fees; and

e.    Such further, equitable, other and different relief as the Court may deem appropriate and necessary.

## COUNT X

## INVASION OF PRIVACY AGAINST DEFENDANT ALISA DIXSON AND DEFENDANT RIVER DEVOE

303.    Plaintiffs repeat, reallege and incorporate by reference herein more specifically each the following paragraphs: 187-191, and 288-302 in Count IX, above, the same as if more fully set forth herein.

304.   Defendant Alisa Dixson ("Defendant Dixson") and Defendant River Devoe ("Defendant Devoe") are each named in his or her individual capacity, and are each officers of the Orange Beach Police Department.

305.   Each Plaintiff brings this claim against Defendants Dixson and Devoe in their individual capacity.

306.   This is a claim arising under the law of the State of Alabama to redress the invasion of Plaintiffs privacy by Defendants Dixson and Devoe.

307.   On February 29, 2024, Defendants Dixson and Devoe, acting individually, wrongfully intruded into the Plaintiffs' home in such a manner as to outrage or cause mental suffering, shame, or humiliation to Plaintiffs.

308.   Defendants Dixson and Devoe, acting individually, wrongfully intruded into the plaintiffs' physical solitude or seclusion.

309.   Because of Defendants' invasion of Plaintiffs' privacy, each Plaintiff suffered severe emotional distress, embarrassment and humiliation for which he claims damages.

310.   The Defendants invasion of the Plaintiff's privacy was not only negligent, but was also intentional and malicious.

311.   Each Plaintiff also seeks punitive damages for the Defendants' intentional and malicious conduct.

WHEREFORE, PREMISES CONSIDERED, each Plaintiff respectfully prays that this Court grant the following relief:

a.   Judgment declaring that Defendants Dixson and Devoe committed acts of invasion of privacy causing injury to the Plaintiffs;

b.   An award of compensatory damages, including damages for mental anguish and emotional distress, to which each Plaintiff may be entitled;

c.   An award of punitive damages as allowed by applicable law;

d.   An award of all court costs and reasonable attorneys' fees; and

e.   Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT XI

**NEGLIGENCE AND RECKLESSNESS AGAINST DEFENDANT RYAN A. FORBESS, DEFENDANT DAVID NIX, AND DEFENDANT ROBERTO MORALES, JR., IN VIOLATION OF ALABAMA LAW**

312.   Plaintiffs repeat, reallege and incorporate by reference herein more specifically each the following paragraphs: 84-119, above, the same as if more fully set forth herein.

313.   Defendant Ryan A. Forbess, Defendant David Nix, and Defendant Roberto Morales, Jr., is named in his individual capacity, and, at all relevant times, was an officer or employee of the Orange Beach City Schools.

314.    Defendant Ryan A. Forbess, Defendant David Nix, and/or Defendant Roberto Morales, Jr., and, at all relevant times, was an officer or employee of Encore Sports Medicine, a division of Encore Rehabilitation, Inc.

315.    Plaintiff John W avers that the negligent actions of Defendant Forbess, Defendant Nix, Defendant Morales each negligently and/or recklessly caused Plaintiff to suffer great personal harm and damage.

316.    On the evening of August 25, 2023, John W and his other classmates were playing in the Orange Beach High School football game. During the first half of the game, John W again became ill and vomited approximately 6 times.

317.    During the football game halftime break, at approximately 8:17 p.m., Defendant Nix, with permission and/or instruction from Defendant Forbess and Defendant Morales, called John R on his cell phone and stated John W was again throwing up and requested permission for Defendant Forbess, Orange Beach City School Doctor, to give John W "something for his Nausea." John R agreed.

318.    Although Defendant Forbess was also John W's primary physician at the time, Dr. Forbess had referred John W to a stomach specialist in Pensacola, FL, by the name of Dr. Blecker.  Although John W was on three different prescription medications on August 25, 2023, no one, including Defendant Forbess, Defendant Nix and Defendant Morales, asked John W if he was taking any medication.

319.   Rather, during the football game's halftime break, Defendant Forbess, Defendant Nix and Defendant Morales merely instructed John W to swallow "two white pills."  It was later discovered by John R that these two white pills were the prescription medication "Zofran."

320.   After halftime, and during the first few minutes of the second half of the football game on August 25, 2023, John W's helmet became damaged, and the inside earpiece was missing or broken.  John W became agitated due to his damaged helmet and attempted to let his coaches know about his helmet.

321.   However, the coaches forced John W back onto the field until after the kick-off.  Following the kick-off, John W ran off the field highly agitated, again pointing at his helmet.  When the coaches discovered John W's helmet was broken and that the ear-piece was missing, Coach David Nix attempted to repair his helmet.

322.   Shortly thereafter, and a few plays later, a referee threw a penalty flag concerning players on the field as one coach was telling John W to get off the field, while another coach was instructing John W to remain on the field.  John W had become both highly confused and agitated.

323.   Witnessing John W's agitation and misunderstanding, Kelly Colley went from her seat in the stands to the field where she stood at the sideline fence seeking to learn what was happening to her son John W and to try to calm him down.

324. When Kelly Colley attempted to speak with her son, she immediately observed that John W was exhibiting alarming physical and psychological symptoms. John W was profusely sweating cold sweats, his eyes were markedly dilated, and he was avoiding all eye contact with her.

325. Very concerned, Kelly Colley reached out to hold John W by the front of his jersey, and urged him to calm down and focus on his breathing.

326. In a distressed state, John W exclaimed, "I feel like I'm going out of my mind."

327. John W then abruptly pulled away from his mother and proceeded toward the field house, leaving Kelly Colly deeply alarmed by his deteriorating condition.

328. On August 26, 2023, John R spoke with Defendant Nix, Defendant Shaw, and Defendant Morales, the Orange Beach City Schools' Athletic Director and confirmed that John W was given a prescription medication named Zofran during the football game on August 25, 2023.

329. Defendant Forbess, Defendant Nix or Defendant Morales should have asked and discovered whether John W was on any other medication; and Defendant Forbess, Defendant Nix or Defendant Morales should have monitored John W after giving him this prescription medication during the football game on August 25, 2023.

330.    Defendant Forbess, Defendant Nix and Defendant Morales should have known that providing such a prescription medication named Zofran to John W during the football game could have caused John W to suffer serious side effects, including headache, constipation, flushing, blurred vision or temporary vision loss, slow heart rate, and severe allergic reactions.

331.    John W further avers that the negligent and/or reckless actions of Defendant Forbess, Defendant Nix and Defendant Morales caused him to suffer significant personal injury and damages.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff John W respectfully requests that this Court grant him the following relief:

a)    Judgment against Defendant Forbess, Defendant Nix and Defendant Morales for personal injury and damages caused by each Defendant's negligence and/or recklessness;

b)    compensatory damages, including mental anguish and emotional distress;

c)    court costs and reasonable attorneys' fees; and

d)    equitable and such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT XII

### RESPONDEAT SUPERIOR LIABILITY AGAISNT DEFENDANT ENCORE REHABILITATION, INC.

332.   Plaintiff John W herby repeats, realleges, and incorporates by reference the preceding paragraphs 84-119 of the Plaintiffs' Complaint and Count XI, above, and avers that the negligent and/or reckless actions of Defendant Forbess, Defendant Nix and/or Defendant Morales were committed in furtherance of the business of Defendant Encore Rehabilitation, Inc. as more specifically stated in Count XI, above.  These negligent and/or reckless actions occurred within the line and scope of each Defendant's employment with Encore Rehabilitation, Inc.; and were part of, or connected to, each Defendant's duties and responsibilities at Encore Sports Medicine, a division of Encore Rehabilitation, Inc. thus causing Encore Rehabilitation, Inc.'s respondeat superior liability.

333.   The negligent and/or reckless actions of the Defendant Forbess, Defendant Nix, and/or Defendant Morales, as employees, agents or otherwise working for Encore Rehabilitation, Inc., and as more specifically stated in Count XI, above, caused Plaintiff great harm and damage, as more fully set forth in paragraphs 312-331, above.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff John W respectfully requests that this Court grant him the following relief:

a)     Judgment against Defendant Encore Rehabilitation, Inc. for personal injury and damages caused by Defendant's respondeat superior liability.

b)      compensatory damages, including mental anguish and emotional distress;

c)      court costs and reasonable attorneys' fees; and

d)      equitable and such further, other and different relief as the Court may deem appropriate and necessary.

## V.   JURY DEMAND

Plaintiffs hereby request trial by jury on all issues so triable.

Respectfully submitted this 21st day of August 2025.

/s/ K. David Sawyer
K. David Sawyer (ASB-5793-R61 K)
Counsel for Plaintiffs

OF COUNSEL
MCPHILLIPS SHINBAUM, LLP
432 E. Jefferson Street
Montgomery, AL 36104
T: (334) 262-1911
F: (334) 263-2321
kdsawyer64@outlook.com

**PLAINTIFFS WILL SERVE OR OBTAIN WAIVER OF SUMMONS FROM**

**EACH OF THE FOLLOWING DEFENDANTS AS ALLOWED PURSUANT**

**TO RULE 4 OF THE FEDERAL RULES OF CIVIL PROCEDURE:**

City of Orange Beach, Alabama
Attn: City Clerk Renee Eberly
4099 Orange Beach Boulevard
Orange Beach, AL 36561

Orange Beach City Schools
Attn. Randy Wilkes
4544 Orange Beach Blvd
Orange Beach, AL

Orange Beach Police Department
4480 Orange Beach Boulevard
Orange Beach, Alabama, 36561

William R. Wilkes
29461 Bayshore Dr. N.
Orange Beach, AL  36561

Chris Shaw
Orange Beach High School
23908 Canal Road
Orange Beach, AL  36561

Scott Cook
20259 Lawrence Rd.
Fairhope, AL  36532

Kylie Burleson
26220 Terry Cove Drive
Orange Beach, AL  36561

Joe Blevins
4544 Orange Beach Blvd
Orange Beach, AL  36561

David Nix
4121 Harbor Road
Orange Beach, AL  36561

Roberto Morales, Jr.
90 Industrial Drive
Oxford, Alabama  36203

Anthony T. Kennon
4303 Harbor Cove Drive
Orange Beach, AL  36561

Joey Brown
4480 Orange Beach Boulevard
Orange Beach, Alabama, 36561

Brandon Bordelon
4480 Orange Beach Boulevard
Orange Beach, Alabama, 36561

Alisa Dixson
4480 Orange Beach Boulevard
Orange Beach, Alabama, 36561

River Devoe
19128 Chipola Drive
Robertsdale, AL  36567

Randy McKinney
4544 Orange Beach Blvd
Orange Beach, AL  36561

Autumm Jeter
2025 Highland Gate Way
Hoover, AL  35244

Ryan A. Forbess. MD
22660 Canal Road, Unit 8
Orange Beach, AL  36561

Encore Rehabilitation, Inc.
Attn: Paige B Plash
57 MCGREGOR AVE SOUTH
Mobile, AL 36608